ALBERT BANDMAN, Respondent, *v.* WILLIAM E. FINN, Appellant.

REAL ESTATE BROKER — WHEN NEW CONTRACT TAKING PLACE OF AGREEMENT FOR COMMISSIONS TO BE PAID UPON THE SALE OF REAL ESTATE CONSTITUTES A NOVATION.  A real estate owner and a broker, who had previously entered into an agreement in writing that the former should pay the latter a certain sum upon the sale of certain premises, thereafter made an oral contract whereby the owner promised to pay the broker, on a designated day, an agreed sum upon the surrender of the written agreement and a release by the broker of all claims thereunder; upon the day fixed the parties met and the owner offered to carry out the oral contract, but the broker failed to bring with him the written agreement, and, the owner requiring the production thereof, he went away with the ostensible purpose of procuring it, but never returned and refused to carry out the new contract.  Thereafter the owner sold the premises, and after the consummation of the sale the broker assigned the written agreement and his assignee brought an action thereon, claiming the full amount named therein.  *Held,* that there being no contention in the pleadings or otherwise that the oral contract was void under the Statute of Frauds because it was not in writing, such contract operated as a novation which the owner could enforce, and discharged the liabilities of the parties under the written agreement; and that no default having been made by the owner under the written agreement at the time such novation was made, so that the broker had no cause of action thereunder, the prinples of accord and satisfaction have no application.

*Bandman* v. *Finn*, 103 App. Div. 322, reversed.

(Argued May 21, 1906; decided June 21, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April

13, 1905, sustaining plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, and granting a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Abram I. Elkus* and *Carlisle J. Gleason* for appellant. By the mutual request for the direction of a verdict and by plaintiff's failure to ask to go to a jury the trial court was clothed with full power to decide the facts. All facts and inferences necessary to support the findings of the trial court, which it fairly derived from the proof, must be deemed established in defendant's favor. (*Westervelt* v. *Phelps*, 171 N. Y. 212; *People ex rel.* v. *Scannell*, 172 N. Y. 316; *Curtis* v. *W. & W. M. Co.*, 141 N. Y. 511; *Provost* v. *McEncroe*, 102 N. Y. 650; *Bank* v. *Sirret*, 97 N. Y. 320.) The agreement of November 23, 1903, constituted a new contract made upon ample consideration, taking the place of the original contingent claim. (*Very* v. *Levy*, 13 How. [U. S.] 345; *Schweider* v. *Lang*, 29 Minn. 254; *C. F. Co.* v. *Dunan*, 91 Md. 144; *Morehouse* v. *S. Nat. Bank*, 98 N. Y. 503; *Billings* v. *Vanderbeck*, 23 Barb. 546; *McIntosh* v. *Miner*, 37 App. Div. 483; *Hartwig* v. *M. Co.*, 74 App. Div. 140; 175 N. Y. 489; *Spier* v. *Hyde*, 78 App. Div. 151; *Tanenbaum* v. *Josephie*, 93 App. Div. 341.)

*Edward M. Shepard*, *Leo G. Rosenblatt* and *Harry Mack* for respondent. The evidence upon the trial conclusively and without dispute established a case of accord without satisfaction. There was no evidence to sustain the theory of a novation. (*Kromer* v. *Heim*, 75 N. Y. 574; *Morehouse* v. *S. Nat. Bank*, 98 N. Y. 503; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *Tilton* v. *Alcott*, 16 Barb. 598; *Bicknell* v. *Speir*, 7 Misc. Rep. 108; *Panzerbeiter* v. *Waydel*, 21 Hun, 161; *Day* v. *Roth*, 18 N. Y. 448.) There having been no satisfaction of the accord, the original claim of plaintiff's assignor remained in full force. (*Day* v. *Roth*, 18 N. Y. 448; *Russell* v. *Lytle*, 6 Wend. 390; *Tilton* v. *Alcott*, 16 Barb. 598; *Brook-*

*lyn Bank* v. *De Grauw*, 23 Wend. 342; *Campbell* v. *Hurd*, 74 Hun, 235; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326.) There was no absolute and conclusive contract to support the theory of substitution and novation. (*Smith* v. *Bradhurst*, 31 App. Div. 98; *Pullich* v. *Casey*, 43 App. Div. 122; *Bennett* v. *Egan*, 3 Misc. Rep. 421; *Montgomery* v. *Knickerbocker*, 27 App. Div. 117; *Diamond* v. *Hartley*, 38 App. Div. 87; *Condict* v. *Cowdrey*, 139 N. Y. 273; *Law* v. *Pemberton*, 10 Misc. Rep. 362; *Hinchman* v. *Bullen*, 7 W. Va. 152.)

CULLEN, Ch. J. On May 14th, 1902, the defendant became the purchaser from the executors of Henry Hilton of certain premises on Broadway and Lafayette place, in the city of New York. Out of the negotiations leading to that sale, in the procurement of which the plaintiff's assignor, one Schmidt, had acted as broker, the defendant executed and delivered to said Schmidt the following agreement:

" I, William E. Finn, in consideration of H. Schmidt executing a release of claim for commission to Horace Russell and Edward D. Harris, as Executors, etc., do hereby agree to pay to said H. Schmidt One thousand dollars on passing of title 726–730 Broadway and 31–39 Lafayette Place, which closing has been set down for May 15th, 1902, and to further pay him the additional sum of Eighty-six hundred dollars on completion of roof of contemplated building on said premises. In the event of a sale of these premises, I agree to pay H. Schmidt said Eighty-six hundred dollars on consummation of said sale.

"WILLIAM E. FINN.

" Witness,

" CHARLES A. STAHL."

In October, 1903, no building having been erected on the premises and the defendant not having sold the same, Schmidt retained a lawyer, Mr. Levy, to negotiate with the defendant for a satisfaction and surrender of the obligation. Finally the negotiations terminated on Monday before Thanksgiving day,

during that year, in an oral agreement whereby the defendant promised to pay Schmidt the sum of $2,500 on the Wednesday following, and Schmidt agreed to execute to the defendant a release of all his claims and to surrender to him the agreement. The parties met at the time and place appointed, and the defendant offered to carry out the contract. Schmidt had not with him the written agreement which was to be surrendered. On the defendant requiring the production of the agreement, Schmidt went away with the ostensible purpose of procuring it. He never returned, but refused to carry out the contract. Thereafter the defendant sold the premises, and after the consummation of that sale, Schmidt having assigned his contract, the assignee brought this suit. At the conclusion of the evidence, each party requested the court to direct a verdict, the plaintiff for the full amount claimed in the agreement and the defendant for the sum which he had agreed to pay therefor. Neither party requested the submission of the cause to the jury. The court directed a verdict for the plaintiff for the sum of $2,500, and ordered the plaintiff's exceptions to be heard in the first instance by the Appellate Division. That court sustained the exceptions and ordered a new trial. From that order an appeal has been taken to this court. Neither party having asked to go to the jury, the determination of any question of fact was necessarily submitted to the trial court. The case having been before the Appellate Division only on the exceptions taken on the trial, all the facts and inferences therefrom must be assumed to have been found in the defendant's favor, and the Appellate Division could not sustain the exceptions unless in no view of the evidence could a jury have found in the defendant's favor.

The testimony in the case tended to show, we may say conclusively showed, for it was uncontradicted, that on Monday there was effected a complete oral agreement by which, on the Wednesday following, the defendant was to pay Schmidt $2,500, and Schmidt was to surrender the agreement and release his claim. This was not the mere act of the lawyer, but Schmidt was informed of the proposed agreement in

detail, accepted it, and the defendant was notified of such acceptance. No objection was raised at the trial, nor is it made on this appeal, that the agreement was invalid under the Statute of Frauds because not in writing, and, therefore, that question is not before us, but the plaintiff insisted that the case is one of accord and satisfaction, and till executed had no binding force, and either party was at liberty to withdraw from it. This was the view entertained by the Appellate Division in setting aside the verdict, the learned trial court having directed the verdict on the ground that the new contract entered into between the parties operated as a novation and discharged the liabilities under the old contract.

I am of opinion that the trial court was correct. Doubtless, the general rule is that an executory agreement for accord without satisfaction made under it does not bar a cause of action, and that tender of performance is insufficient for that purpose. (*Ryan* v. *Ward*, 48 N. Y. 204; *Kromer* v. *Heim*, 75 N. Y. 574.) It is also the rule that payment of a less sum than that due does not constitute a valid satisfaction, although otherwise if the debtor gives the creditor additional security. (*Jaffray* v. *Davis*, 124 N. Y. 164.) These rules, however, do not apply to the present case. At the time of the agreement between the parties in November, 1903, there had been no breach of the written contract with the defendant. Under that contract he was obligated to pay only in one of two contingencies, on the completion of the roof of the contemplated building on such premises, or in case of a sale of the same by the defendant. Neither of these contingencies had occurred. Therefore, the situation was that of a creditor holding an unmatured and contingent obligation, agreeing with his debtor for the surrender of the obligation. Even in the case of a claim unmatured, but not contingent, the payment and receipt of a less sum than that specified is a full satisfaction of the larger claims not yet due. (*Brooks* v. *White*, 2 Metc. 283; *Bowker* v. *Childs*, 3 Allen, 434.) As is said in the cases it may be much more advantageous to the creditor to obtain the money before it is due, and this is sufficient con-

sideration for receiving a smaller sum. So, also, it has been held that an executory agreement for such a surrender or compromise will be enforced. In *Chicora Fertilizer Company* v. *Dunan* (91 Md. 144) the defendant was indebted to the plaintiff in a sum for the payment of which at a future date he executed his written agreement, and as collateral security for the payment of the obligation he delivered certain stock and promissory notes of third parties. Before the maturity of his obligation he entered into an oral agreement with the plaintiff by which he agreed to pay it immediately a less sum than that owing by him, and the plaintiff agreed on such payment to cancel the obligation and surrender the collateral. It was held that the earlier date of payment was sufficient consideration for the agreement on the part of the plaintiff and that the agreement would be enforced. It was there said : " The actual payment of the amount agreed to be paid by Duncan would have constituted a good accord and satisfaction if the collateral consideration relied on was sufficient to support the agreement; but the question is not whether there has been an accord and satisfaction but whether there was a valid consideration for the agreement of December 3rd and 5th, and, if there was, whether the failure of the creditor to perform his part of that agreement by refusing to accept the money precludes a court of equity from enforcing it." In the present case the original agreement between the parties, though witnessed, was not under seal, and, hence, we are not embarrassed with the technical rule that an agreement under seal can be modified only by an instrument of a similar character. The plaintiff's assignor having at the time of the second agreement no cause of action against the defendant, I do not see why he could not enter into a valid agreement with the defendant for the transfer and surrender of the latter's obligation to the same extent as he might have done with any third party.

The learned counsel for the respondent insists that what the plaintiff's assignor negotiated for was not the surrender of an unmatured obligation, but the satisfaction of an existing claim,

33

and that, therefore, the rules as to accord and satisfaction applied. Assuming that Schmidt urged that the claim was due, to this the defendant did not assent. On the contrary, the defendant's position was that there was no existing liability on the contract, and he required as a condition of the settlement not only a release of any claim but the surrender of the contract. The counsel also suggests there might have been such delay in the construction of the building on the premises as to render the defendant liable, even though the roof of the building was not completed. To this it is sufficient answer that no such fact was pleaded in the complaint nor any proof of it given on the trial. The real nature of the transaction must, therefore, be determined on the record before us regardless of the conflicting claims of the parties, and on that record it appears that no default had been made by the defendant when the second agreement was made. Therefore, the plaintiff had no cause of action at that time and the principles of accord and satisfaction have no application.

It is further to be observed that in the aspect most favorable to the plaintiff the claim at the time of the agreement for the surrender of the contract was a disputed one. The contention of the defendant that it was not due was not only made in good faith but, as we have said, was well taken. The rules as to accord and satisfaction do not obtain in their entirety in the compromise of disputed claims. Thus the payment of a less sum than that claimed or actually owing is a good satisfaction if the dispute is *bona fide*. (*Fuller* v. *Kemp*, 138 N. Y. 231; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326.) On the other hand, if a defendant gives his note or mortgage in settlement of the demand he cannot defend on the ground that there was no liability on his part, or if liable it was for a less amount. (*Stewart* v. *Ahrenfeldt*, 4 Denio, 189; *Feeter* v. *Weber*, 78 N. Y. 334.) Nor does the rule that an executory agreement for accord until performed does not constitute a defense, which always obtains in the case of a conceded debt (*Kromer* v. *Heim*, 75 N. Y. 574), equally apply to an agreement or compromise of a disputed claim.

In most of the cases in the reports the debtor had given his promissory note or some security for the amount agreed upon. I appreciate that those cases may be distinguished from the one before us because it may be said that the note or security was itself an execution of the accord. But there are at least two cases in this court in which that distinction cannot be drawn. In *Wehrum* v. *Kuhn* (61 N. Y. 623) the complaint was for work, labor and services and for money loaned. It also alleged a compromise and settlement between the parties and an agreement to pay two thousand dollars. The referee, who is now a judge of this court, found for the plaintiff on all counts and awarded judgment for the amount at which the parties had compromised the claim. An examination of the printed case on appeal shows that the agreement of compromise was oral and nothing was passed between the parties in pursuance thereof. On appeal it was urged that the finding of the referee on the counts for labor and services and money loaned was without evidence to support it. This court held through Judge EARL: " It is not important to inquire whether the referee committed any error as to his findings upon these claims or not for the reason that the plaintiff also claims that in May, 1869, he and the defendant came together and that the defendant agreed to pay him and he agreed to receive . the sum of $2,000 as a compromise of all his claims against the defendant and the referee has, upon sufficient evidence, found this compromise and awarded to the plaintiff only the two thousand dollars and interest.  *  *  *  It is the policy of the law to uphold such a compromise. The compromise of the disputed claim, whether the claims were in fact valid or not, furnishes a sufficient consideration for the promise to pay the $2,000." (Citing *Stewart* v. *Ahrenfeldt,* 4 Denio, 189; *Crans* v. *Hunter,* 28 N. Y. 389; *Vosburgh* v. *Treator,* 32 N. Y. 561.) In *Dunham* v. *Griswold* (100 N. Y. 224) the plaintiff asserted that he intrusted certain securities to the defendant, who had converted them. To adjust this claim, which he disputed, the defendant executed a written agreement to pay the plaintiff the sum of $9,000. The action was

brought upon that promise. The defendant offered to prove
that he owed the plaintiff nothing, which proof was excluded.
The ruling was upheld by this court, Judge EARL saying:
" The plaintiff having made a claim against him, and he
having disputed it, and the parties having settled the dispute
by agreeing upon the amount due in an account stated, which
the defendant promised to pay, that promise is founded upon
a sufficient consideration and can be enforced against him
although he might be able to prove that nothing was in fact due
from him." It is true that in that case the agreement was in
writing, but the strict rule as to accord without satisfaction in
the case of a conceded debt obtains where the agreement is
in writing. (*Kromer* v. *Heim, supra.*) The ground, there-
fore, on which the decisions in the *Wehrum* and *Dunham*
cases proceeded is that there may be a valid executory agree-
ment to compromise a disputed claim which, though unexe-
cuted, is binding on the parties and determines their rights.
The distinction between the two classes of cases is well illus-
trated in *Flegal* v. *Hoover* (156 Penn. St. 276). There the
Supreme Court of Pennsylvania said : " This case was unfor-
tunately tried on a wrong basis throughout. It was assumed
that the agreement of May, 1892, was an accord, and as its
terms had not been fully carried out, that there had been no
satisfaction ; that the agreement was, therefore, inoperative,
and the parties were remitted to their rights and liabilities
under the original contract. This was a radical error. The
agreement of May, 1892, was a compromise of disputed
rights. The defendants claimed that the plaintiff was violat-
ing the contract in such manner as to entitle them to rescind,
and they had in fact taken possession of the land a short time
before by force. The plaintiff, on the other hand, claimed
that he was pursuing his contract rights, and he had in turn
ousted the defendants by force from the land. The parties
then came together, agreed upon a settlement, put its terms in
writing, which was signed by both, and partly carried out.
Such an agreement is not an accord, but a compromise, and is
as binding as any other contract." The agreement in the

present case was not tentative but specific and final. The defendant agreed to pay, and the plaintiff agreed to receive, a specific sum at a specified time and place. Had the defendant defaulted in the performance of his agreement, the plaintiff's assignor could have sued on his promise regardless of the merits of the claim under the original contract. Equally the defendant may hold the plaintiff's assignor to the agreement.

The order of the Appellate Division should be reversed, the plaintiff's exceptions overruled and judgment directed to be entered on the directed verdict at the Trial Term, with costs to the appellant in both courts.

HAIGHT, J. (dissenting). The defendant had purchased through H. Schmidt, the plaintiff's assignor, certain premises on Broadway and Lafayette place, in the city of New York, which he was endeavoring to sell. Growing out of such purchase the parties had entered into a written agreement, which, so far as is material herein, provided that the defendant agreed to pay Schmidt $8,600 upon the consummation of the resale of the premises. Thereafter, and in October, 1903, Schmidt retained one Levy, a lawyer, to negotiate with the defendant for a satisfaction and surrender of this agreement. The negotiations continued until the 23rd day of November, when the defendant told Levy that he would pay $2,500 to Schmidt and $250 to Levy for his counsel fees, in settlement and for a release of the contract in question. This offer was reported to Schmidt and his attorney was authorized to accept it, who thereupon arranged to have the matter settled at his office on the 25th day of November, at three o'clock in the afternoon. At that time the defendant appeared at Levy's office with two checks, one for $2,500 and the other for $250, ready to carry out the settlement of the claim, but Schmidt did not appear or furnish a release of the defendant from his aforesaid agreement. Prior to this the defendant had entered into negotiations for a sale of the premises to Wanamaker, and such negotiations had proceeded to such an extent that the terms had been agreed upon and

duplicate contracts drawn, which were signed by the defendant on the 24th day of November and then transmitted to Wanamaker, who signed them on the 25th and returned to the defendant his copy about a quarter-past three in the afternoon, within a few minutes after the failure of Schmidt to appear and close the transaction on his part.

The question presented upon this review is as to whether the negotiations for a settlement that had taken place between plaintiff and the defendant had ripened into a completed contract, so that a novation had taken place and the new contract substituted for the old, or whether the negotiations had proceeded to the extent only that their minds had met upon the terms with the understanding that the settlement by the payment of the money and the delivery of the release was to take place on a future day; in other words, that there was an accord executory without satisfaction. I think the undisputed evidence in this case, even adopting the most favorable view that can be taken thereof for the defendant, brings it within the latter rule of an accord executory — a meeting of the minds of the parties upon the terms, with the satisfaction or payment postponed until a future time. The defendant had offered Schmidt $2,500 for his claim under the contract. Schmidt had said that he would accept it, and the defendant was to pay over the $2,500, and Schmidt was to execute and deliver a release of his claim on the Wednesday following, at the hour designated; the payment of the money and the delivery of the release were to be concurrent acts. The satisfaction, therefore, was executory. It was postponed until the future. There had been simply an accord of their minds upon the terms of the settlement. It was, therefore, an uncompleted contract, one which could not be enforced by action or substituted for the existing contract. The rights of the parties herein cannot be stated more forcibly by me than to quote from Justice BARRETT in the case of *Panzerbeiter* v. *Waydell* (21 Hun, 161). In that case one of the parties had made a claim against the other and action had been brought thereon. Negotiations were then under-

taken for a settlement and the terms had been agreed upon, but the payment of the claim and the execution of the release and the discontinuance of the action were to be made on a future day. The learned justice says with reference thereto : "There was no acceptance of the discontinuance and release, nor were they even left with the defendants or their attorneys. There was, in fact, no intention to surrender these documents without concurrent payment. * * * This is a plain case of an accord executory ; such an agreement would have been no bar to the original suit unless executed by the acceptance of the $150. * * * The promise to discontinue and release was not binding upon the plaintiff. Consequently the defendants were without a consideration for their promise. In the case of mutual and concurrent promises there must be reciprocity of obligation." (*Mitchell* v. *Hawley*, 4 Denio, 414 ; *Russell* v. *Lytle*, 6 Wend. 391 ; *Daniels* v. *Hallenbeck*, 19 Wend. 408 ; *Tilton* v. *Alcott*, 16 Barb. 598 ; *Day* v. *Roth*, 18 N. Y. 448 ; *Kromer* v. *Heim*, 75 N. Y. 574 ; *Brennan* v. *Ostrander*, 18 Jones & Spencer, 426 ; *Noe* v. *Christie*, 51 N. Y. 270 ; *Osborn* v. *Robbins*, 37 Barb. 481.)

I do not understand the learned chief judge to question the rule I here invoke. He, however, contends, if I understand his opinion correctly, that the claim existing between Schmidt and the defendant was an unmatured claim, and for that reason the parties had the right to agree upon the compromise of it, and that it was not subject to the rule that where a payment of a portion of an undisputed claim had been made and receipt given therefor in full, it did not conclude the party from recovering the balance due, as stated in the case of *Ryan* v. *Ward* (48 N. Y. 204). I quite agree to this. I concede that the parties may agree to surrender and compromise an unmatured claim. They may also agree to compromise and settle a disputed claim. What I do not agree to is that a different rule obtains with reference to the settlement of a disputed claim from that of an unmatured claim. Where the minds meet upon the terms of a settlement of a disputed claim and the delivery of the release and the payment is post-

poned to a future date, it is but an accord executory and not a complete settlement or agreement, for the reason that no consideration passes between the parties at the time; it is but a mutual understanding as to terms, but a failure to complete by satisfaction.   The same is true with reference to the settlement of an unmatured claim.   (*Hearn* v. *Kiehl*, 38 Penn. St. 147.)

Under the provision of the contract the whole of the $8,600 became due and payable from the defendant to Schmidt upon the consummation of the resale of the premises.   This took place within a few minutes after three o'clock of the day that was fixed for the settlement between the defendant and Schmidt.   It is quite possible that the defendant had reason to believe that this sale would be effected when he made his offer to compromise with Schmidt.   Schmidt was not advised of the fact that negotiations for a sale were pending between the defendant and Wanamaker.   But in view of the findings in this case, I incline to the view that no question of law arises with reference to this branch of the case which we can consider upon this review.

I favor an affirmance of the order of the Appellate Division.

Edward T. Bartlett, Werner and Hiscock, JJ., concur with Cullen, Ch. J.; Gray, J., concurs with Haight, J.; O'Brien, J., absent.

Ordered accordingly.